IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDMON GASAWAY, | : | 1:11-cv-2386 |
| | : | |
| Plaintiff, | : | |
| | : | Hon. John E. Jones III |
| v. | : | |
| | : | Hon. Martin C. Carlson |
| WARDEN FCI ALLENWOOD, *et al* | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

**August 31, 2012**

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

This matter is before the Court on the Report and Recommendation ("R&R") of Magistrate Judge Martin C. Carlson (Doc. 39), filed on August 13, 2012, which recommends that we grant the Defendant's Motion to Dismiss, (doc. 34), and deny Plaintiff's Motion to Amend, (doc. 38). (Doc. 39 at 26).

Plaintiff Edmon Gasaway ("Plaintiff" or "Gasaway") filed objections to the R&R on August 28, 2012. (Doc. 41). Accordingly, this matter is ripe for disposition. For the reasons that follow, we shall overrule Plaintiff's objections, adopt the R&R in its entirety, grant Defendant's motion to dismiss, dismiss Plaintiff's complaint with prejudice, and deny Plaintiff's motion to amend.

**I.    STANDARDS OF REVIEW**

### A. Review of Magistrate Judge's R&R

When objections are filed to the report of a magistrate judge, the district court makes a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objections are made. 28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 674-75 (1980). The court may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. *Id.* Although the standard of review is *de novo*, 28 U.S.C. § 636(b)(1) permits whatever reliance the district court, in the exercise of sound discretion, chooses to place on a magistrate judge's proposed findings and recommendations. *Raddatz*, 447 U.S. at 674-75; *see also Mathews v. Weber*, 423 U.S. 261, 275 (1976); *Goney v. Clark*, 749 F.2d 5, 7 (3d Cir. 1984).

### B. Motion to Dismiss

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the

complaint, as well as "documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . ." *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Accordingly, to satisfy the plausibility standard, the complaint must indicate that defendant's liability is more than "a sheer possibility." *Iqbal*, 556 U.S. at 678. "Where a

complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 679. Next, the district court must identify "the 'nub' of the . . . complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.* Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 556-57). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## III.  DISCUSSION

A.   **PROCEDURAL HISTORY**

Plaintiff commenced the instant case through the filing of a civil complaint on December 28, 2011 lodging claims against the Warden of FCI Allenwood, and "unknown other(s)," for allegedly entering his cell and confiscating certain tax and financial documents related to an ongoing administrative proceeding involving the Internal Revenue Service ("IRS"). (Doc. 1; Doc. 39 at 3-4).

After the case was referred to Magistrate Judge Carlson on January 9, 2012, Defendant filed a Motion to Dismiss for Lack of Jurisdiction on July 10, 2012. (Doc. 34). Plaintiff filed a brief in opposition on July 23, 2012, (doc. 35), and Defendant filed a supporting brief on July 24, 2012. (Doc. 36). Since Plaintiff filed his brief in opposition to Defendant's motion out of turn, the Magistrate Judge issued an order on July 24, 2012 ordering Plaintiff to file a response to the motion consistent with Local Rule 7.6 on or before August 7, 2012. (Doc. 37). Thereafter, Plaintiff filed a Motion to Amend, (doc. 38), on August 7, 2012, which the Magistrate Judge indicated was filed on the deadline prescribed by the court for responding to Defendant's motion to dismiss, and was thus construed, in part, as a response to that motion. (Doc. 39 n.3).

B.   **FACTUAL BACKGROUND**

As Magistrate Judge Carlson noted, Plaintiff "is a federal prisoner who has been a prodigious – and prodigiously unsuccessful – litigant in federal court" through his filing of a multitude of lawsuits and habeas corpus petitions over the years. (Doc. 39 at 1). As one court noted in commenting on Gasaway's history of serial filings with the court:

> At the core of most, if not all, of Plaintiff's action and appeals is his theory that (1) both the United States of America and the State of California have incurred a debt to Plaintiff for their unauthorized use of his name, which is a "legal fiction," and which he owns exclusively as a "sovereign," (2) the documents he prepares memorializing that debt (complete with citations to the Uniform Commercial Code) are valid negotiable financial instruments, and (3) his submission of those instruments to a federal court clerk's office mandates his release from prison.

(*Id*. at 3 (citing *Gasaway v. Williams*, 8:11-CV-0549 GTS/RFT, 2012 WL 264611 (N.D.N.Y. Jan. 30, 2012) (footnotes and citations omitted))). The case *sub judice* arose from this pattern of eccentric litigation, in which Plaintiff asserts *Bivens* claims and claims pursuant to the Federal Tort Claims Act against the "Warden FCI Allenwood and Unknown Other(s)." (Doc. 1; Doc. 39 at 3). Specifically, he alleges that numerous unnamed persons took certain tax and financial documents from his prison cell in March of 2010. (*Id*.). Plaintiff asserts that the documents were being used in an ongoing administrative proceeding with the IRS, and that he

has been prejudiced in these proceedings because the defendants have continued to withhold these papers from him. (*Id*. at 3-4).

### C. RECOMMENDATION

Within the R&R, Magistrate Judge Carlson recommended that we: (1) grant the Defendant's motion to dismiss; (2) dismiss Plaintiff's complaint with prejudice; and (3) deny Plaintiff's motion to amend. (*Id*. at 26).

### D. OBJECTIONS TO THE R&R

Plaintiff raises five (5) objections to the R&R. First, he claims that the Magistrate Judge's comment in footnote three (3) which indicates that Plaintiff's "motion to amend was filed by Gasaway on the deadline prescribed by this court for responding to the defendant's motion to dismiss. We will, therefore, treat this pleading, in part, as a response to that motion, a response which endeavors to substitute a new defendant into this action." (Doc 41 at 2 (citing Doc. 39 n.3)). Plaintiff assets that he was given 14 days to reply to the Defendant's brief upon service of the brief according to local rule 7.7. Furthermore, he argues that since he received defendants brief on or about July 29, and filed his motion to amend on August 2, 2012, the filing of his motion to amend was well within the time prescribed by local rule 7.7. (Doc. 41 at 2).

Notably, this objection appears to stem from Plaintiff's inability to comply with the local rules, particularly rule 7.6, which provides that "[a]ny party opposing any motion, . . . , shall file a brief in opposition within fourteen (14) days *after service of movant's brief, . . .*" Local Rule 7.6 (emphasis added). While Defendant filed its motion to dismiss on July 10, 2012, (doc. 34), it filed its brief in support thereof, (doc. 36), within fourteen (14) days of the filing of its motion consistent with Local Rule 7.5. Instead of waiting for receipt of Defendant's supporting brief, Plaintiff decided to file his opposition brief out of turn on July 23, 2012. (Doc. 35). As a result of this procedural misstep, and providing Plaintiff with the opportunity to file another brief in opposition, the Magistrate Judge issued an order on July 24, 2012, instructing the Plaintiff to file a response to the motion:

> in accordance with Local Rule 7.6 on or before **August 7, 2012**. Pursuant to Local Rule 7.7 the movant may then file a reply brief fourteen days after the filing of the response, on or before August 21, 2012. All briefs must conform to the requirement prescribed by Local Rule 7.8.

(Doc. 37). Despite Plaintiff's claim that he only received Defendant's brief in support on July 29, 2012, and thus his motion to amend filed on August 2, 2012 was well within the fourteen days prescribed by local rule 7.7, the Court finds that the objection is irrelevant and misplaced because the Magistrate Judge ultimately credited Plaintiff's motion to amend as a timely response, in part, to Defendant's

brief. Therefore, regardless of whether the Magistrate Judge's calculation of when Plaintiff's fourteen (14) days started to run for the filing of his opposition brief, we find that since the Magistrate Judge considered Plaintiff's filing as a response thereto, this objection is baseless and shall be overruled.

Second, Plaintiff objects to the combination of the tort claim he filed with the Bureau of Prisons, and the *Bivens* action pending before the Court, together in the instant litigation. Based on Plaintiff's complaint, which alleged both constitutional tort claims pursuant to *Bivens* and claims under the Federal Tort Claims Act, we find his subsequent attempt to uncouple his claims to be unavailing. As Defendant's objection fails to provide any additional argument or support for this contention, we fail to find any merit in this objection and shall overrule the same.

Third, Plaintiff objects to the Magistrate Judge's R&R to the extent it concludes that the Warden at FCI–Allenwood was named as a defendant in the instant litigation. Curiously, after objecting to this conclusion, Plaintiff proceeds to recite a number of reasons why the Warden is liable to Plaintiff based on his alleged refusal to take action after being notified of a purported "potential risk" to Plaintiff, which Plaintiff fails to identify. Reading Plaintiff's objection in connection with his motion to amend, it appears that what Plaintiff is seeking to

accomplish is the substitution of the Warden with the United States of America, which he claims is the proper defendant in this case. (Doc. 38). However, the allegations in his complaint provide no basis for the requested substitution, and the objection itself only further demonstrates that Plaintiff's allegations are primarily lodged against the Warden at FCI–Allenwood. (*See* Doc. 41 at 2-3). As a result, we shall overrule Plaintiff's objection to this extent.

Fourth, Plaintiff objects to the R&R to the extent the Magistrate Judge concludes that Plaintiff has attempted to assert a Fourth Amendment claim based on the search of his cell. (Doc. 41 at 3). Again, Plaintiff states that his Fourth Amendment claim should:

> be stricken from the record. Plaintiff knows as it is a well know facts [sic] that a prisoner does not have any expectance [sic] of privacy in a prison setting as such. Nor has plaintiff ever stated such a 4th Amendment claim in his complaint. In complaint of plaintiff, plaintiff only addresses the fact that the documents in questions were taken from his cell, not that the officers had no right to search and seized the documents.

(Doc. 41 at 3-4). Despite Plaintiff's contention that he did not raise a Fourth Amendment claim, he nevertheless contends that a prisoner's right to possess certain legal and religious material must be balanced against the institutional needs of security. (*Id*. at 3). In closing this portion of his argument, Plaintiff claims:

> In such cases it is not an inherent right to be free from searches and seizures that allows recovery, but the constitutional protection that

> surrounds and flows from the property seized. Bureau of Prisons officials, the United States and or some one is responsible for the taking and or deprivation of plaintiff's property interest.

(*Id*. at 4). Thus, it appears from Plaintiff's own pleading and objections to the R&R, that it was appropriate for the Magistrate Judge to analyze his *Bivens'* claim as an alleged Fourth Amendment violation. Furthermore, while Plaintiff objects to this characterization of his claims, it is noteworthy that he does not propose an alternative constitutional claim that he was instead attempting to plead, aside from the contention highlighted above. In addition, Plaintiff's own assertion that his right to recovery is based on "the constitutional protection that surrounds and flows from the property seized" belies any argument that the Magistrate Judge improperly analyzed his claims under the Fourth Amendment. Accordingly, we shall overrule Plaintiff's objections to his extent.

Finally, Plaintiff's fifth objection centers on the Magistrate Judge's conclusion that Plaintiff is unable to sustain a due process claim. He claims that under the Bureau of Prisons Program Statement 5580.07 § 553.131(2)(iii), if an inmate establishes ownership of the property in question, but the property is identified as contraband, staff shall mail such items, aside from hard contraband, to a designation of the inmate's choice and at his expense. (*Id*. at 4). Despite this, he claims that the Warden denied him access to his property and denied him adequate

pre-deprivation and post-deprivation due process. (*Id*. at 4-5). He also argues that under § 500.1(h), items possessed by an inmate ordinarily are not considered contraband if the inmate was authorized to retain the item upon admission to the institution, if the item was issued by authorized staff, purchased from the commissary, or purchased or received through approved channels. (*Id*. at 5). Therefore, Plaintiff claims that since he was permitted, upon arrival at FCI–Allenwood, to possess these documents, the confiscation of them is contrary to the prison's policy and his right to due process.

We find Plaintiff's objection to ultimately lack merit. As the Magistrate Judge concluded, it is well-settled that *Bivens* actions against the United States, or federal agencies or officials sued in their official capacity, are barred by sovereign immunity absent an explicit waiver of that immunity. (Doc. 39 at 12 (citing *FDIC v. Meyer*, 510 U.S. 471, 483 (1994))). Therefore, even if the Court were to grant Plaintiff's motion to amend and substitute the United States of America for the Warden, a *Bivens* claim would clearly not lie against the United States. Furthermore, it is abundantly apparent that Plaintiff's *Bivens* claim against the Warden must fail because, as the Magistrate Judge concluded, it is evident from Plaintiff's complaint that he was provided meaningful post-deprivation due process by the prison. (*Id*. at 18). The Magistrate Judge correctly noted the two-step

process an inmate must satisfy in successfully alleging a due process claim: (1) the confiscation of property; and (2) an allegation that property was taken and the prisoner was afforded no post-deprivation administrative remedy. (*Id*. at 20 (citing *Monroe v. Beard*, 536 F.3d 198, 210 (3d Cir. 2008) ("[a]n unauthorized intentional deprivation of property by prison officials does not violate the Due Process Clause if a meaningful post-deprivation remedy for the loss is available. Pre-deprivation notice is not constitutionally required.") (internal citations and marks omitted))).

 Here, Plaintiff alleges that after the documents were confiscated from his cell, the corrections officer who was instructed to remove the documents provided him with a confiscation form to sign in order to claim ownership of the documents. (Doc. 1 at 4). In addition, he asserts that on June 28, 2010, Counselor Bedford met with Plaintiff to discuss his claim, provided him a BP-8 form, and instructed him to complete the form in order to commence his administrative remedy process. (*Id*.). He notes that on the same day, he filed his administrative remedy with the Office of Warren Ebbert, which was denied on July 15, 2010. Subsequently, he filed a Regional Appeal on August 25, which was thereafter denied in September of 2010. On September 7, 2010, Plaintiff filed "his central office appeal," challenging the institution's conduct based on alleged violations of their own policy. (*Id*. at 5). Therefore, we find that far from being denied due process, Plaintiff was afforded

13

every opportunity to contest the alleged confiscation of documents from his cell.

Therefore, since Plaintiff alleged in his complaint the detailed post-deprivation process he was afforded concerning his complaints, we agree with the Magistrate Judge that such concessions are fatal to his constitutional due process argument.

## IV.   CONCLUSION

Accordingly, for the reasons set forth above, Plaintiff's objections, (doc. 41), are overruled, the R&R, (doc. 39), shall be adopted in its entirety, Defendant's motion to dismiss, (doc. 34), shall be granted, Plaintiff's complaint, (doc. 1), shall be dismissed, and Plaintiff's motion to amend, (doc. 38), shall be denied.  An appropriate Order shall issue.